DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

AT MARCH TERM, 1856.

........................

DEN ON THE DEMISE OF VANDERVEERE *vs.* GASTON AND MASON.

1. The clerk's certificate, endorsed on an execution against goods and lands, is sufficient evidence that it was recorded before it was delivered to the she iff; and his testimony, that, when in a hurry, he was accustomed to omit making the record until after the return of the writ, and would not swear that he did in fact record it before it was delivered, held not sufficient to invalidate his certificate.

2. A letter of guardianship in due form will be presumed, in a collateral proceeding, to have been legally issued.

3. A judgment entered upon a bond and warrant of attorney given by a person who was executor and testamentary guardian, for the money in his hands, to a new guardian, is valid and not fraudulent, whether the guardian was legally appointed or not, and whether the legacy to the ward was a vested or a contingent legacy.

————

This was an action of ejectment, tried before Justice Potts, at the Somerset Circuit. A verdict having been rendered for the defendants, judgment was entered thereon in the Supreme Court, and the case came before this

court on a writ of error. The errors relied on for a re-versal arose on exceptions taken at the trial to the charge of the judge, and sufficiently appear in the opinion delivered in this court. The case had been before tried, and the judgment reversed. 4 *Zab.* 818.

Argued by *Ransom* and *Halsted,* for the plaintiff in error, and by *Brown,* for the defendants.

*Ransom,* for plaintiff.

1. The clerk's certificate is not *prima facie* evidence of the record. No statute requires it or makes it evidence. The case is analogous to the transcript of a justice, which is no evidence of matters not required to be entered. *Hunt* v. *Boylan,* 1 *Halst* 211.

2. The will of John Henry made Dr. Stryker trustee, but no money was due when the bond was executed to Talmage, the newly appointed guardian. He had no right then even to pay it. If there was no debt, there could be no judgment. *Hoyt* v. *Hoyt,* 1 *Harr.* 138. The trustee could not divest himself of the trust until a new one was appointed. *Dagley* v. *Tolferry,* 1 *Peere Wms.* 285; *Phillips* v. *Paget,* 2 *Atk.* 80; *Davies* v. *Austen,* 3 *Brown C. C.* 178; *Lee* v. *Brown,* 4 *Ves.* 362; *Overton* v. *Bannister,* 3 *Hare* 503; 1 *Caines' Cases* 96; *Sparhawk* v. *Buell,* 9 *Verm.* 41; *Hoyt* v. *Wilson,* 2 *Edw.* 202; *Jones* v. *Stocket,* 2 *Bland* 409; 3 *Hayw.* 265; *Hill on Trustees* 400; 8 *Paige* 104.

It is no answer to this proposition, that Miss Henry in fact lived until she was twenty-one; she had not attained that age when the judgment was confessed. The right of the parties must be determined as they existed in 1840. The judge was mistaken in regard to the construction of the will.

3. The letter of guardianship was void. The court had no jurisdiction to appoint a new guardian until the testamentary guardians were duly removed.

*Brown*, for defendants.

1. The clerk's certificate was sufficient evidence of the recording; this was so held when this case was here before. 1 *Greenl.* § 483-4; 3 *Star. Ev.* 1250; *Browning* v. *Flanagin*, 2 *Zab.* 571; *Den* v. *Steelman*, 1 *Harr.* 66; *Kinnersley* v. *Orpe, Doug.* 57; *Johnston* v. *Darragh*, 3 *Halst.* 285.

2. Talmage was duly appointed guardian. The testamentary guardians never accepted or gave bond. *Nix. Dig.* 317. At any rate, the guardianship, even if irregular, is not void. The Orphans Court has the sole jurisdiction to grant letters, and every presumption is in favor of their validity. 3 *Gill & J.* 113.

3. The legacy was vested, subject to be divested on certain contingencies. 1 *Jarm. Wills* 733; 2 *Wms. Executors,* 766, 773. It being in trust is of no consequence. *Booth* v. *Booth*, 4 *Ves.* 399. Mrs. Henry died in 1834, and after her death it became vested; there was then no possible contingency upon which it could be divested. Miss Henry was the only child of both parents. The legacy to her mother entirely failed. Granting the daughter's legacy to be contingent on the death of her mother, her father's disposition failed, and the whole property vested in the child as heir to both. *Jarm.* 635, 750.

4. The testamentary guardians not having accepted the trust, the property remained in the hands of Dr. Stryker, as executor. And whether the legacy was vested or not, or whether Talmage was duly appointed guardian or not, the bond was not fraudulent. It was a fair transaction, and the ten thousand dollars fairly due to somebody. Talmage took it as trustee for the right owner. There was a good and honest consideration for the bond.

5. Any irregularity in the proceedings will not defeat the conveyances under the judgment. It is the judgment of a court of general jurisdiction, valid until reversed. *Evans* v. *Adams*, 3 *Green* 373; *Scudder* v. *Coryell*, 5 *Halst.*

342; *Hoyt* v. *Hoyt*, 1 *Harr.* 141. It is very clear there was no fraud in fact, and the jury so found. A payment to Miss Henry, or Talmage as her guardian, would not have been fraudulent. The question is not whether a payment could have been enforced. *Rob. Fraud. Con.* 64, 66. A court of chancery, if it would not have decreed a payment of the money, would have ordered it to be made secure. If it could have been secured by virtue of a decree, a voluntary security was not fraudulent.

6. I insist this question is *res judicata*. An application was made to the Common Pleas to set aside this judgment as fraudulent, and was refused. The power of that court was the same, as to that question, as a court of equity. If the chancellor had refused, would any other court interfere. 7 *Durn.* & *E.* 455 ; 1 *East* 537 ; 5 *Cowen* 550 ; *Mayo* v. *Childs*, 3 *Munroe* 260.

*Halsted*, in reply.

1. The point as to the clerk's certificate comes up now different from what it did before. The certificate was no evidence ; it was authorized by no law. 3 *Cowen's Phil. Ev.* 1045, *notes ; Overton's R.* 221 ; 1 *Wash. C. C. R.* 2.

2. The legacy was in the hands of the executors, as trustees, and whether vested or contingent, is not material. The trustees were bound to retain it until they were properly changed. 2 *Wms. Executors* 1278, and cases before cited. I insist the legacy was contingent, but that is not material, because, at all events, it was not tangible, that is payable. *Booth* v. *Booth*, 4 *Ves.* 399. The executors or Dr. Stryker had no right to pay it to Miss Henry, or to any one, until divested of the trust by proper proceedings. If it could not be paid, it could not be the legal consideration of a judgment bond.

3. The appointment of Talmage was illegal and wholly void. The Orphans Court had no jurisdiction to appoint him until the testamentary guardians were duly removed.

It is like the case where a father is living.  *Sax.* 260 ; 2 *Green's C. R.* 220.

4. I insist the judgement is void on its face ; also, that it is fraudulent, and therefore void.    The facts show fraud, and it ought to have been submitted distinctly to the jury, whether the transaction was *bona fide.*    Even if the consideration of the bond was good, it is plain the real object was to get rid of the prior judgment in the Circuit Court of the United States.

5. As to *res judicata,* there are at least two answers.    1. The court did not decide the fraud ; the question was only as to the sufficiency of the affidavit.    2. This suit is not between the same parties, nor upon the same subject matter.

ELMER, J.  The lessors of the plaintiff claimed title to the premises in dispute, under a deed made by the marshal of the district of New Jersey, by virtue of a judgment against Dr. Peter I. Stryker and Henry Vanderveere, in the Circuit Court of the United States, November 11, 1837, and an award of execution thereon upon *scire facias,* April 1, 1840. The defendants claimed under a deed made by the sheriff of the county of Somerset, by virtue of a judgment against Stryker, signed in the Court of Common Pleas of the said county, January 13, 1840, and an execution thereon the same day.    It was therefore agreed, that if the last named execution was duly recorded before it was put into the hands of the sheriff, and the judgment and execution were valid and *bona fide,* the title of the defendants must prevail.

The original *fi. fa.* was produced, which was marked on the back in the handwriting of the clerk, " recorded January 30, 1840," and a certified copy of the record was also produced, at the end of which was entered, " Received and recorded, January 13, 1840."  Mr. Mann, being produced as a witness for the plaintiff, testified that he was

clerk at the time, and made the record, and said, "I have no uniform practice as to recording executions. If I was in a hurry I made a short entry, and recorded them at length after they were returned. I consider the certificate on the execution no certain evidence that it was recorded on that day. I would not be willing to swear that the execution was recorded before it went into the hands of the sheriff." The judge charged the jury on this point as follows : "The plaintiff insists the execution was not recorded when placed in the hands of the sheriff. This was fatal, if so. The writ has the clerk's certificate that it was recorded on the day it was issued. This is *prima facie* evidence of the fact, and throws on the plaintiff the burden of proving the contrary. This, I think, he has not done ; we cannot avoid titles upon a possible, or even probable ground, on which to guess an official certificate is untrue." This part of the charge being excepted to, it is now insisted that it was erroneous. It was, however, in accordance with the opinion given in this court when this case was here before, and we think was correct. The law makes the recording of the execution before it was put into the hands of the sheriff the official duty of the clerk, and the case therefore, comes within the presumption *omnia rite esse acta. Kinnersley* v. *Orpe, Doug.* 56, is very much in point. It was there held that the certificate of the enrolment of a case, on the margin thereof, was sufficient evidence of the enrolment without the production of an office copy. The mere statement of the officer, that he sometimes put the writ in the sheriff's hands before he recorded it, and could not swear that he recorded this writ before doing so, was not sufficient to overcome the evidence of the certificate itself. The danger of allowing titles to be thus invalidated is too obvious to require comment.

It being alleged, on the part of the plaintiff, that the judgment under which defendants claimed was absolutely

void, and was fraudulent as against the creditors of Dr Stryker, and therefore void as against those claiming un der the marshal's deed, the judge charged in substance, that if the acts proved were done in good faith, and not to defraud creditors, but to secure the eventful payment of an honest debt, they were not fraudulent in law; the want of regularity or legality of these proceedings did not necessarily make them fraudulent or void. This part of the charge being also excepted to, it is now insisted that it was erroneous, and that the facts proved show that the proceedings were in law fraudulent and void.

Dr. Stryker and another person, it appears, were the executors of John Henry, who died in 1825, leaving an infant daughter, named Mary Elizabeth; and they were also appointed by the will her guardians. The will directed seven thousand dollars to be set apart and appropriated to the maintenance and education of the infant, the interest to be paid to the widow until she attained the age of six years, after which the executors were to retain the interest of said sum in their own hands, and appropriate the same, or so much as might be necessary, to the maintenance and education of said daughter, until she should attain the age of twenty-one years, at which time the principal and unexpended interest were to be paid to her. All the residue of the estate was also bequeathed to the said daughter after the death of her mother. The widow died within ten years after the death of her husband. The executors named in the will proved it, and took upon themselves the burden of its execution. No inventory was proved or filed, but there was evidence to show that the personal estate, amounting to about nineteen thousand dollars, went into the hands of Dr. Stryker, who was the grandfather of the daughter. The executors never formally accepted the guardianship or gave bond, as required by the statute.

At the date of the judgment in the Court of Common

Pleas, it being found that Dr. Stryker was much embar
rassed in his circumstances, and that the large judgment
obtained against him in the Circuit Court was liable to
be enforced, letters of guardianship of the person and
property of Mary Elizabeth Henry were granted by the
Orphans Court of the county of Somerset to Thomas Tal
mage, January 13, 1840, and on the same day Dr. Stryker
executed a bond to him, as such guardian, in the penal sum
of twenty thousand dollars, conditioned for the payment of
ten thousand dollars on demand, accompanied by a warrant
of attorney to confess judgment, by virtue of which the
judgment in question was entered and execution issued.
The judgment, even if liable to be reversed or set aside as
irregular, cannot be impeached in this proceeding, except
for fraud.   That the sum of ten thousand dollars was then
in the hands of Dr. Stryker, for which he was then or at
some future time bound to account to Mary Elizabeth
Henry, or to some person in case of her death, as a part of
the estate of John Henry, deceased, must be assumed to
have been proven to the satisfaction of the jury.   It being
established by the verdict that the real object of the bond
and judgment was to secure this money, and not to delay
or hinder creditors, the only question now is whether they
must be regarded as merely voluntary, and therefore a fraud
in law.

On the part of the plaintiff, it was insisted in this court
that the Orphans Court had no jurisdiction to appoint
Thomas Talmage guardian of the minor ; that the legacy
to her was not yet due, and that the bond and judgment
were therefore without consideration, and for that reason
fraudulent and void, as against the purchasers at the mar-
shal's sale.   That the Orphans Court might legally have
appointed a guardian upon the petition of the minor, who
had attained the age of fourteen, if the testamentary
guardians were regularly removed for not having given
the bond required by law, or for any other sufficient

cause, cannot be doubted, and was not denied by the counsel of the plaintiff. If the court did in fact make the appointment without having first removed the testamentary guardians in a formal manner, as to which nothing appears, and which we cannot presume, it would not follow that the letter of guardianship was void, and could be so treated in this collateral proceeding. It was regular on its face, and was issued by a court having jurisdiction by proper proceedings to commit the guardianship of the minor to such person as she should choose, and whilst it remains in force must be presumed to have been regularly issued. But it is not important, for the decision of the present question, whether Mr. Talmage was or was not the legal guardian of Miss Henry. He assumed to act as such, and Dr. Stryker having given to him a bond, which recited that he was the guardian, neither of them could afterwards dispute the fact. Mr. Talmage took the bond and judgment for the benefit of the minor, or whoever might become entitled to the money, and held whatever he collected on it as trustee for them. If the money was really due or to become due, there was no fraud in this. It is too well settled to require a reference to authorities, that a debtor in failing circumstances may prefer any of his creditors, by paying the money justly owing, or by a judgment or other security, whether the day of payment originally agreed on has or has not arrived.

There was considerable discussion, on the argument, whether the legacy to Miss Henry was a vested or contingent legacy. But this is wholly immaterial. If it be admitted that Dr. Stryker could not divest himself of liability to such person as might become entitled to the money in case she had died before she was twenty-one, by a payment of the money to her or to any other person for her use, such a payment would have been no fraud, if made fairly with no fraudulently purpose. The other creditors had no right to complain of this. They had no greater right to be

Den v. Gaston.

paid or secured than Miss Henry, or those who might have succeeded her. The transactions, so much complained of, amounted to no more than the setting apart of so much of the property in Dr. Stryker's hands as should be sufficient to meet a just liability, a liability, too, having strong claims to the protection of the law.

The judge stated in his charge, that, as the widow died in 1834, all the estate vested in the infant, as sole heir of her father; and this was excepted to as an erroneous construction of the will. It is not material to inquire whether it was correct or not. At the time the bond was executed, Miss Henry had, at the least, a contingent right to all the estate, if she arrived at the age of twenty-one. She was the heir expectant, and if she died before she was twenty-one, the money was payable to some one representing her or her father. The payment or security of the money to Talmage, as her guardian, was for the benefit of whoever might be entitled in case of her death. Thus to pay or secure it was no fraud; and whether the judge was right or wrong as to the construction of the will, since upon the only point material to the question, namely the fraud, the charge was correct, there is no error prejudicial to the plaintiff, of which he can take advantage on this exception.

The judgment must be affirmed.

*For affirmance*—The CHANCELLOR, the CHIEF JUSTICE, Judges ELMER, HAINES, HUYLER, OGDEN, RYERSON, RISLEY, VALENTINE, VREDENBURGH and WILLS.

*For reversal*—None.

CITED in *Clapp* v. *Ely*, 3 *Dutch.* 598.